**ELI LILLY AND COMPANY,**
Plaintiff-Appellee,

v.

**MEDTRONIC, INC.,**
Defendant-Appellant.

No. 88–1409.

United States Court of Appeals,
Federal Circuit.

March 29, 1989.

Rehearing Denied May 31, 1989.

Suggestion for Rehearing In Banc
Declined July 18, 1989.

Philip S. Johnson of Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, Pa., argued for defendant-appellant. With him on the brief were Gary H. Levin, Albert W. Preston and Henrik D. Parker. Of counsel were Joseph F. Breimayer and John L. Rooney of Medtronic, Inc., Minneapolis, Minn.

Before NIES and ARCHER, Circuit Judges, and COWEN, Senior Circuit Judge.

NIES, Circuit Judge.

Medtronic, Inc., brings an interlocutory appeal from a permanent injunction[1] entered by the United States District Court for the Eastern District of Pennsylvania, *Eli Lilly & Co. v. Medtronic, Inc.,* No. 83–5393 (E.D. Pa. Apr. 21 1988) (Ditter, J.), enjoining it from, *inter alia,* the manufacture, use, or sale of certain medical devices, and from the use of data generated from such medical devices. Medtronic asserts that 35 U.S.C. § 271(e)(1) (Supp. III 1985) permits the use it is making of its medical devices, namely, for testing and obtaining certain approval by the Food and Drug Administration (FDA). Prior to trial, the district court had ruled that that statute applies to drug products only; Medtronic could not, therefore, assert it as a defense against Lilly's charges of infringement. *See Eli Lilly & Co. v. Medtronic, Inc.,* 5 USPQ2d 1760, 1987 WL 26676 (E.D.Pa. 1987). We disagree. Accordingly, we reverse the court's ruling that 35 U.S.C. § 271(e)(1) is restricted to drugs, and we remand for determination of whether, in fact, Medtronic's use of its medical devices falls under section 271(e)(1). Because it is unclear that all of Medtronic's activities fall within the section 271(e)(1) exception, we leave it for the court on remand to decide to what extent the injunction should be vacated, modified, or stayed during further proceedings.

Timothy J. Malloy of McAndrews, Held & Malloy, Chicago, Ill., argued for plaintiff-appellee. With him on the brief were Lawrence M. Jarvis and Gregory J. Vogler. Of counsel were Leroy Whitaker and Bruce J. Barclay, Eli Lilly and Co., Indianapolis, Ind.

1. This court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1292(a)(1) and (c)(1) (1982).

## I

As an initial matter, we note that the propriety of the grant or denial of an injunction under 35 U.S.C. § 283 (1982) is reviewable under an abuse of discretion standard. *Windsurfing Int'l, Inc. v. AMF Inc.*, 782 F.2d 995, 1002, 228 USPQ 562, 567 (Fed.Cir.), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986). However, abuse of discretion may be established by showing an injunction is based upon a misinterpretation of applicable law. *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (quoting *PPG Indus. v. Celanese Polymer Specialities Co.*, 840 F.2d 1565, 1572, 6 USPQ2d 1010, 1016 (Fed.Cir.1988) (Bissell, J., additional views)). Here, we conclude that the district court interpreted 35 U.S.C. § 271(e)(1) too narrowly.

## II

### BACKGROUND

Lilly sued Medtronic for infringement of claims 1–6 of its U.S. Patent Re. No. 27,757 and claim 1 of U.S. Patent No. 3,942,536 under 35 U.S.C. § 271(a) (1982). Lilly alleged that Medtronic's development and marketing of its automatic implantable cardioverter defibrillators and catheter electrodes infringed Lilly's patents covering such medical devices. Medtronic asserted the statutory noninfringement defense provided by 35 U.S.C. § 271(e)(1), and moved for partial summary judgment on that basis. *See Eli Lilly & Co.*, 5 USPQ2d 1760. The court denied Medtronic's motion, ruled that section 271(e)(1) does not apply to medical devices, and prohibited Medtronic from presenting evidence at trial regarding the section 271(e)(1) defense. *Id.* at 1762. Following a trial on the merits, which resulted in Medtronic being held to infringe Lilly's patents, the district court reaffirmed its interpretation of section 271(e)(1) and issued the subject injunction. *See Eli Lilly*

*& Co. v. Medtronic Inc.*, 696 F.Supp. 1033, 7 USPQ2d 1447 (E.D.Pa.1988).

## III

This case raises a question of first impression, namely, whether the noninfringement defense of 35 U.S.C. § 271(e)(1), added by amendment in 1984, applies to medical devices.

Shortly before section 271(e)(1) was enacted, this court addressed whether it was an infringing use under 35 U.S.C. § 271(a)[2] for a nonlicensee to use a patented drug product, prior to the patent's expiration, for purposes strictly related to obtaining FDA approval for a generic substitute intended to be sold commercially only after the patent expires. The case addressing that issue was *Roche Products, Inc. v. Bolar Pharmaceutical Co.*, 733 F.2d 858, 221 USPQ 937 (Fed.Cir.), *cert. denied*, 469 U.S. 856, 105 S.Ct. 183, 83 L.Ed.2d 117 (1984). This court in *Roche* concluded that such use did not fall within any established experimental use exception and declined to extend or create an experimental use exception for FDA testing. The court noted that Congress was the appropriate forum to resolve the matter and that legislation was pending on related subjects which made it aware of the problem. *Id.* at 865, 221 USPQ at 942. Under the *Roche* ruling, infringement would be found for the investigational testing of an infringing medical device even though, under 21 U.S.C. § 360e (1982 & Supp. III 1985) of the Federal Food, Drug, and Cosmetic Act, such testing is required to obtain FDA approval to market such devices.

The *Roche* decision resulted in an immediate effort by the generic drug manufacturers to escape the effect of the decision. An amendment of the patent statute was put forth in connection with the pending legislation noted in the *Roche* decision.[3] Before Congress, those interests urged

---

2. Section 271(a) provides: "Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent."

3. The pending legislation provided for abbreviated testing procedures for generic drugs. H.R. 3605, 98th Cong., 1st Sess. (1983) ("Drug Price Competition Act of 1983").

that the time required to obtain FDA approval for their generic products, if they had to wait to begin testing until after a patent expired, gave an effective extension of the patent term, which was contrary to the interests of the public in obtaining lower cost drugs as soon as possible. It was an objective of the generic drug manufacturers to be able to place their generic substitutes for a patented drug on the market the day after the patent expired. That objective could be achieved only if they were able to acquire data and apply to FDA prior to that time, activities which were legally impermissible under *Roche.* At the same time, Congress had before it bills supported by the proprietary drug interests which had as their objective the extension of the patent term. The justification for such extension also lay in the FDA testing requirements which consumed, in many instances, a number of years of the patent term and effectively reduced the patentee's time for exclusive commercial exploitation of the invention.

The Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98–417, 98 Stat. 1585 (the Act), signed into law in 1984, simultaneously effected some of the aforementioned objectives. The Act overruled *Roche* by adding section 271(e)(1) to title 35 which reads [4] in pertinent part:

> It shall not be an act of infringement to make, use, or sell a patented invention (other than a new animal drug or veterinary biological product (as those terms are used in the Federal Food, Drug, and Cosmetic Act and the Act of March 4, 1913)) solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs.

Section 271(e)(3) (Supp. III 1985) further provides:

> In any action for patent infringement brought under this section, no injunctive or other relief may be granted which would prohibit the making, using or selling of a patented invention under paragraph (1).

Conduct within the ambit of section 271(e)(1) is not an act of infringement, and, hence, cannot be enjoined pursuant to section 271(e)(3). This appeal raises the question of whether section 271(e)(1) is a limited exception which applies only to drugs, as the district court ruled, or applies generally to patented inventions, including medical devices.

In the patent term restoration portion of the legislation, which became codified in 35 U.S.C. § 156 (Supp. III 1985), the benefits of patent extension are not restricted to drugs, but extend to medical devices. *See* 35 U.S.C. § 156(f)(1)(B).[5]

## IV

Each of the parties has urged that the above-quoted statutory language of 35 U.S. C. § 271(e)(1) is "clear." However, each has put forth equally plausible interpretations of section 271(e)(1), which to us means the language is fraught with ambiguity. The district court and Lilly limit the exception for "patented inventions" to patented *drugs* by reading the last clause of 271(e)(1) as a restriction on that otherwise broad statutory language. Medtronic urges that the exception extends to all types of "patented inventions" provided the use being made is for testing to obtain approval from FDA for sale of a product after the relevant patent has expired. Per Medtronic, the last clause describes the type of law, not the type of patented invention. Furthermore, as is often the case, each side has been able to highlight general statements in the legislative history which allegedly support their own reading of section 271(e)(1). However, amidst ambiguous language in the statute, and ambiguous statements in the legislative histo-

---

**4.** On November 16, 1988, President Reagan signed Public Law No. 100–670, entitled the "Generic Animal Drug and Patent Term Restoration Act," into law. Although that law amends 35 U.S.C. § 271(e)(1), the amendment does not affect our analysis here.

**5.** 35 U.S.C. § 156(f)(1)(B) defines the word "product" for which the term of a patent may be extended to include:

> Any medical device, food additive, or color additive subject to regulation under the Federal Food, Drug, and Cosmetic Act.

ry, what is clear to this court, as well as to the parties and the district court, is that section 271(e)(1) was added to overrule this court's decision in *Roche.*

While the claimed subject matter in *Roche* was limited to a drug product, the holding of that case was not so limited. The holding provided an interpretation of the scope of 35 U.S.C. § 271(a) without regard to what particular goods might be involved. Specifically, the court decided that the unlicensed use of a patented invention for testing and investigation, even though strictly related to obtaining FDA approval for a substitute, was an infringement under 35 U.S.C. § 271(a). Apart from *Roche,* there is no other precedent directly on the point.

Congress explicitly stated: "The provisions of section 202 of the bill [i.e., the amendment of Title 35 adding section 271(e)] have the net effect of reversing the holding of the court in *Roche.*" H.R.Rep. No. 857, 98th Cong., 2d Sess., pt. 2 at 27, *reprinted in* 1984 U.S.Code Cong. & Admin. News 2647, 2711. The clear intent of Congress was to create an FDA experimental use exception for use which *Roche* had held would constitute infringement under section 271(a). *Id.,* pt. 1 at 45–46, *reprinted* at 2678–79. The effect of the section 271(e)(1) amendment as a restriction on section 271(a) is comparable to the interrelationship of statutes addressed by Justice Scalia in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). There he points out that:

> Repeal by implication of an express statutory text is one thing; it can be strongly presumed that Congress will specifically address language on the statute books that it wishes to change.... But repeal by implication of a legal disposition implied by a statutory text is something else. The courts frequently find Congress to have done this—whenever, in fact, they interpret a statutory text in the light of surrounding texts that happen to have been subsequently enacted. This classic judicial task of reconciling many laws enacted over time, and getting them to "make sense" in combination, necessarily assumes that the impli-

cations of a statute may be altered by the implications of a later statute. And that is what we have here.

108 S.Ct. at 676. That is what we have here as well. No statutory language in section 271(a) is repealed by implication. Rather, the *Roche interpretation* of the language of section 271(a) is necessarily repealed (that is, by implication) by the addition of section 271(e)(1). In overturning *Roche,* Congress eliminated *certain activity* as being infringing. No persuasive reason is suggested why Congress would create an exception with respect to those activities for drugs only, particularly as medical devices receive the benefit of the companion patent term restoration legislation. Further, it simply makes no sense to apply *Roche* as precedent to nondrug products when the case has no precedential value as to the specific products of the *Roche* suit, namely, drugs. We can only conclude that Congress intended the enactment of section 271(e)(1) to set aside the *Roche* interpretation of section 271(a) in all of its ramifications. Accordingly, we hold that section 271(e)(1) allows a party to make, use, or sell *any type* of "patented invention" if "solely" for the restricted uses stated therein.

### Relief

■ The court indicated, when deciding Medtronic's summary judgment motion regarding the availability of section 271(e)(1) as a defense, that a genuine issue of material fact exists as to whether Medtronic's use of its devices was *"solely* for purposes reasonably related to submission of information" to the FDA. *Eli Lilly & Co.,* 5 USPQ2d at 1761 n. 6. Accordingly, we remand this case to the district court for determination of that factual issue. Because we are not certain whether Medtronic's section 271(e)(1) defense, if valid, goes to the entirety of its otherwise infringing activities, we leave it to the district court to decide whether the injunction should be vacated, modified, or stayed while the trial of the above issue is proceeding.

*Costs*

Each party shall bear its own costs.

REVERSED AND REMANDED.