**ELI LILLY AND COMPANY,**
Plaintiff–Appellee,

v.

**MEDTRONIC, INC.,**
Defendant–Appellant.

No. 90–1207.

United States Court of Appeals,
Federal Circuit.

Decided Aug. 17, 1990.

Unpublished Opinion Aug. 17, 1990.

Published Opinion Sept. 27, 1990.

Gregory J. Volger, McAndrews, Held & Malloy, Ltd., Chicago, Ill., argued for plaintiff-appellee. With him on the brief were Timothy J. Malloy, Lawrence M. Jarvis and Alejandro Menchaca. Also on the brief were Leroy Whitaker, John C. Jenkins, M. Therese Crouse, Eli Lilly and Co., Indianapolis, Ind. and Edward P. Gray, Cardiac

Pacemakers, Inc., St. Paul, Minn., of counsel.

John F. Lynch, Arnold, White & Durkee, Houston, Tex., argued for defendant-appellant. With him on the brief were Jack C. Goldstein, W. Bryan Farney and Albert B. Deaver. Also on the brief were Ronald E. Lund, John W. Borg and Joseph F. Breimayer, Medtronic, Inc., Minneapolis, Minn., of counsel.

Susan B. Tabler, Ice Miller Donadio & Ryan, Indianapolis, Ind., was on the brief for amicus curiae, Douglas P. Zipes, M.D.

Before NIES, Chief Judge, ARCHER and CLEVENGER, Circuit Judges.

NIES, Chief Judge.

## DECISION

Medtronic, Inc. appeals from the order of the United States District Court for the Eastern District of Pennsylvania, *Eli Lilly and Co. v. Medtronic, Inc.*, 735 F.Supp. 652, 14 USPQ2d 1352 (E.D.Pa.1990) (Ditter, J.) finding Medtronic in willful contempt of its permanent injunction order. The district court issued its injunction on April 21, 1988, pursuant to its judgment entered in accordance with a jury verdict finding that Medtronic had infringed U.S. Patent Re No. 27,757 and U.S. Patent No. 3,942,536 by making, using, and selling certain medical devices known as pacemaker cardioverter defibrillators (PCD's), and with the district court's ruling that the patents were not unenforceable. The injunction prohibited Medtronic, *inter alia*, from making, using, or selling its devices and from using data from such infringement to market or promote its devices in the United States. On appeal from that injunction, this court held in *Eli Lilly and Co. v. Medtronic, Inc.*, 872 F.2d 402, 10 USPQ2d 1304 (Fed. Cir.1989) *aff'd*, —— U.S. ——, 110 S.Ct. 2683, 110 L.Ed.2d 605, 15 USPQ2d 1121 (1990), that the district court erred in con-

cluding that the exception from infringement with respect to activities for the purpose of developing and submitting information under certain Federal laws provided by 35 U.S.C. § 271(e)(1)[1] (Supp. V 1987) was not available for any medical devices and in precluding consideration of that issue at trial. This court remanded for trial to determine whether Medtronic's activities in connection with the subject medical devices in fact fell within the statutory exemption. Because we were not certain whether Medtronic asserted the applicability of the section 271 exemption to all of the acts charged and found to be infringements, we left it to the district court to decide whether to vacate, modify or stay its outstanding injunction. *Id.* 872 F.2d at 406; 10 USPQ2d at 1307. Upon remand, Medtronic asked for the injunction to be vacated, modified or stayed and for a new trial. Without any additional proceedings on the merits of the § 271(e)(1) issue, the district court modified the injunction to exclude activities falling under § 271(e)(1), but left the injunction otherwise intact. The court has not yet granted a new trial. Subsequently, Eli Lilly moved to hold Medtronic in contempt for activities which it asserted were prohibited by the injunction as modified. The district court found Medtronic to have engaged in "infringing" activities and to have violated the terms of the modified injunction, and, therefore, held Medtronic in contempt.

As relief for the contempt, the district court issued an order directing Medtronic to announce in writing its intention to terminate all agreements with persons who engage in any activity for the purpose of sale of the Medtronic PCD's; to cease providing information or data about its PCD's to anyone in the United States, particularly, Dr. Douglas P. Zipes whom Medtronic employed as a consultant; to specifically terminate its affiliation with Dr. Zipes without any payments; to require Dr. Zipes to

---

1. The statute provides:

§ 271(e)(1). Infringement of patent.

It shall not be an act of infringement to make, use, or sell a patented invention (other than a new animal drug or veterinary biological product (as those terms are used in the Federal Food, Drug, and Cosmetic Act and the Act of March 4, 1913)) solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs.

return to Medtronic all PCD's and information in his possession; to display a statement with the mock-up Medtronic PCD's in a touring museum exhibit that it is not the device of any particular manufacturer; and to include in its second quarter report a statement concerning the injunction with respect to Medtronic's PCD's and the issuance of the contempt order. Medtronic moved in this court for vacatur of this order of contempt. Because the contempt order was not accompanied by findings or opinion to support that order, this court granted Medtronic's motion.

On February 19, 1990, the district court entered the contempt order of the subject appeal, providing relief similar in all respects to that in the previous order. A full opinion setting out findings of fact and conclusions of law accompanied the order. Medtronic appealed the order to this court and was granted a partial stay of the injunctive relief therein.

During this time frame but after briefing of this appeal, the Supreme Court affirmed the decision of this court that the exemption from infringement provided in § 271(e)(1) included medical devices. The Court has now remanded that case to this court for further proceedings consistent with its opinion. *Eli Lilly and Co. v. Medtronic, Inc.,* —— U.S. ——, 110 S.Ct. 2683, 110 L.Ed.2d 605, 15 USPQ2d 1121 (1990).[2] In disposition of the present appeal, we hold that the findings of the district court holding Medtronic in contempt are deficient. Accordingly, we *reverse* the finding of contempt and *vacate* the contempt order. Further, we hold that the judgment of the Supreme Court and the prior judgment of this court negate the prior findings of infringement made in the district court. Accordingly, to carry out the mandate of the Supreme Court for further proceedings to be in accordance with its opinion, we *vacate* the prior judgment of infringement and all injunctive orders issued to date in this case.

## BACKGROUND

The factual and procedural history of the instant suit by Eli Lilly against Medtronic,

alleging infringement of claim 1 of the '757 reissue patent and claims 1–6 of the '536 patent, directed to certain medical devices called automatic implantable cardioverter defibrillators and to certain leads used with such defibrillators, is recounted in detail in the district court's initial opinion, *Eli Lilly and Co. v. Medtronic, Inc.,* 696 F.Supp. 1033, 7 USPQ2d 1447 (E.D.Pa.1988), and in the initial appeal to this court, *Eli Lilly,* 872 F.2d at 404; 10 USPQ2d at 1034–35. These facts need not be repeated here except to the extent necessary to resolve the propriety of the order of the district court holding Medtronic in contempt for violating the injunction of April 21, 1988 as modified June 28, 1989.

After entry of the injunction, Dr. Zipes, whom Medtronic continued to employ as a consultant and senior research investigator, was engaged in lecturing to groups of cardiologists about tachyrhythmia devices. In his lectures, Dr. Zipes specifically discussed both the Eli Lilly and Medtronic devices, referring to the Medtronic PCD as the "Rolls Royce" of such devices. In such presentations, Dr. Zipes used data gathered from the implantation of a Medtronic PCD in Canada. Also after issuance of the injunction, Medtronic began sponsoring a touring museum exhibit in the United States which includes as a display a mock-up of a Medtronic PCD, consisting of an empty PCD can, two patch leads, and a screw-in lead. Finally, Medtronic included in its 1989 Annual Report a two-page section on Medtronic PCD's, detailing the PCD's development, its functions and its potential market in the United States and elsewhere. The Annual Report also included a photograph taken in Europe of a Medtronic PCD manufactured in Europe. These activities are the basis for the district court's contempt order.

## JURISDICTION

■ Lilly asserts that no appeal can be taken at this time from the order of the district court holding Medtronic in con-

---

**2.** This court received the remanded case after   argument of this appeal.

tempt, urging that such order is not immediately appealable. However, the order from which appeal has been taken not only found Medtronic in contempt but also put into place injunctive relief supplementary to the injunction found to have been violated and, therefore, constitutes an order within the scope of section 1292(a)(1). *International Ass'n of Machinists and Aerospace Workers v. Eastern Airlines, Inc.*, 849 F.2d 1481, 1485–86 (D.C.Cir.1988); *In re Arthur Treacher's Franchise Litigation*, 689 F.2d 1150, 1155 n. 9 (3d Cir.1982). Thus, this court has jurisdiction over this appeal under 28 U.S.C. § 1292(c)(1) (1988).

## MERITS

■ Paragraph 1 of the injunction broadly prohibits Medtronic from infringing the patents including "activity which has as its natural or intended purpose the sale of" the Medtronic Model 7210 cardioverter, 7215 PCD or 7216 PCD. Medtronic first asserts that the court based its finding of contempt on activities which the court erroneously found constituted infringements. The court stated:

\*     \*     \*     \*     \*     \*

3. Medtronic violated paragraph 1 of the injunction ... on each occasion *that Medtronic permitted Dr. Douglas P. Zipes, a Medtronic consultant and senior research investigator, to engage in an infringing activity* which has as its natural or intended purpose the sale of the Medtronic 7215 PCD or the Medtronic 7216 PCD.

\*     \*     \*     \*     \*     \*

5. Medtronic violated paragraph 1 of the injunction ... when Medtronic provided the automatic implantable defibrillator can and associated leads for display in the museum exhibit. *The inclusion of the can and the associated leads is an infringing activity* which has as its natural or intended purpose the sale of the Medtronic 7215 PCD or the Medtronic 7216 PCD.

6. Medtronic violated paragraph 1 of the injunction ... when Medtronic included a two-page feature on the Medtronic PCD in its 1989 Annual Report. *The article in the annual report is an infringing activity* which has as its natural or intended purpose the sale of the Medtronic 7215 PCD or the Medtronic 7216 PCD. [Emphasis added.]

We agree with Medtronic, and indeed Lilly concedes, that the cited activities are not themselves acts of infringement. A threat of sale does not constitute an act of infringement.[3] *See Lang v. Pacific Marine and Supply Co., Ltd.*, 895 F.2d 761, 13 USPQ2d 1820 (Fed.Cir.1990) (Section 271 does not cover acts other than an actual making, using or selling of the patented invention).

■ Lilly asserts that contempt may be upheld, nevertheless, because the injunction prohibits Medtronic's promotional activities apart from such acts constituting infringements. Lilly sought to have the court amend its findings to refer to the promotional activities as "prohibited" rather than "infringing." The court refused to do so. In any event, Lilly's argument is unpersuasive. The injunction "enjoined and restrained [Medtronic] from infringing (directly, contributorily or by inducement). . . ." Thus, by the terms of paragraph 1, no contempt can be found thereunder without a finding of infringement. Moreover, paragraph 4 of the injunction, by its terms, specifically did not enjoin activities within the section 271(e)(1) exemption. Thus, the court could not hold Medtronic to have violated the terms of the injunction absent a finding that the exemption did not apply. There is no such finding.

Similarly, paragraph 3 enjoins the use, in the United States, of data generated from the infringing manufacture, use or sale of the accused devices. Again, Medtronic asserts that the data in issue has not been found to have been generated by any *infringing* activity because the applicability of the section 271(e)(1) exemption has not been determined. We agree. As indicated,

**3.** Moreover, there is simply no evidence that, after the injunction issued, Medtronic contemplated any sales prior to the expiration of the subject patents.

the injunction by its terms recognizes this exemption in paragraph 4 and permits such activity. Yet, the district court's opinion is completely silent on this critical issue. Thus, the findings are insufficient to establish a violation of the injunction.

In view of the inadequacy of the district court's findings, Medtronic cannot be held in contempt and the contempt order must be vacated.

## DISPOSITION OF THE SUPREME COURT REMAND

■ In the prior judgment of this court, now affirmed, this court held that Medtronic had been deprived of the opportunity to prove a valid exemption to infringement and remanded for trial of that issue. *See Eli Lilly,* 872 F.2d at 406, 10 USPQ at 1307. For the reasons previously stated, this court did leave it to the trial court to decide whether to vacate, modify or stay the injunction. However, the effect on the district court's prior judgment of infringement of this court's ruling that the section 271(e)(1) exemption issue had to be tried was not a matter of discretion. The prior judgment of infringement encompassed all of the Medtronic activities without a determination that any activities fell outside the purview of section 271(e)(1). Lilly has the burden of persuasion that Medtronic is an infringer and cannot meet that burden here prior to a judgment encompassing the merits of the section 271(e)(1) exemption. On the prior remand, the district court did not vacate any part of the judgment but merely modified the *injunction* so as to exclude section 271(e)(1) activities. That action was insufficient to correct the defect in the judgment itself. We conclude that the mandate of this court, and now of the Supreme Court, require that the prior judgment be vacated.

Likewise, the injunction based on the defective infringement judgment must fall. The district court entered a permanent injunction, albeit prior to entry of a final judgment in the entire case.[4] Such an injunction is only proper to the extent it is "to prevent the violation of any right secured by patent." 35 U.S.C. § 283 (1982); *see Pac–Tec, Inc. v. Amerace Corp.,* 903 F.2d 796, 802; 14 USPQ2d 1871, 1876 (Fed. Cir.1990). A determination that such right has been violated is, thus, a necessary predicate. *Cf. Lang,* 895 F.2d at 765; 13 USPQ2d at 1823 (§ 271 provides no relief for threatened patent infringement). In the case of a permanent injunction, that necessary predicate is a judgment of infringement, which as previously stated, requires consideration of, and an adverse ruling on, the section 271(e)(1) issue in this case.

Furthermore, section 271(e)(3) specifically provides:

> (3) In any action for patent infringement brought under this section [271], no injunctive or other relief may be granted which would prohibit the making, using or selling of a patented invention under paragraph [271(e) ](1).

The statute makes clear that *no* injunction may issue until the § 271(e)(1) exception has been adjudicated and ruled out. It was not sufficient merely to modify the original injunction to exclude § 271(e)(1) activities, as the district court did on June 28, 1989. The statute clearly requires that the § 271(e)(1) issue be decided prior to the grant of injunctive relief and therefore, on the prior remand, the injunction should have been, and indeed had to be, vacated. *Cf. King Instrument Corp. v. Otari Corp.,* 814 F.2d 1560, 1563–64, 2 USPQ2d 1201, 1203–04 (Fed.Cir.1987) (injunction vacated because sales were made under implied license).

## CONCLUSION

In view of the above considerations, we vacate the district court's order holding Medtronic in contempt, the prior judgment of infringement, and all injunctive orders

---

**4.** The original proceeding came to this court as an interlocutory appeal from the entry of a permanent injunction. *See Eli Lilly,* 872 F.2d at 404; 10 USPQ2d at 1304. At that time, there was no final judgment in the case and there is none up to this date. First, post-trial motions, *inter alia,* concerning damages delayed final disposition, and then our remand required further trial proceedings.

based on that judgment. Further, no permanent injunction may be granted unless and until a judgment of infringement is entered following consideration of the asserted exception to infringement under § 271(e)(1).

REVERSED AND VACATED.