26 F.3d 138
 33 U.S.P.Q.2d 1590
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Carl C. JACOBSON, Jr., E.J. Johnson and International
Surfacing, Inc., Petitioners-Appellees,
v.
Ted D. Lee, and Gunn, Lee & Miller, and Cox Paving Company,
Howard Cox, Sidney Cox, Respondents-Appellants,
and
Blaze Construction, Inc., Alan Deatley, Albert Deatley, and
Paul Wood, Respondents.
Carl C. JACOBSON, Jr., E.J. Johnson, and International
Surfacing, Inc., Plaintiffs-Appellees,
v.
COX PAVING COMPANY, Defendant-Appellant.
 Nos. 93-1325, 93-1326, 93-1327 and 93-1427.
 United States Court of Appeals, Federal Circuit.
 April 14, 1994.
 
 Before RICH, PLAGER, and SCHALL, Circuit Judges.
 DECISION
 SCHALL, Circuit Judge.
 
 
 1
 Appellants, Cox Paving Company, Howard Cox, Sidney Cox, Ted D. Lee, and Gunn, Lee & Miller[1] appeal from the April 14, 1993 order of the United States District Court for the District of Arizona, No. 89-1786, holding appellants in civil contempt of its preliminary injunction order. As an ancillary matter, Cox Paving also appeals from the district court's January 5, 1993 order releasing a preliminary injunction bond. We affirm-in-part, reverse-in-part, vacate-in-part, and remand.
 
 BACKGROUND
 
 2
 Carl C. Jacobson, Jr., E.J. Johnson, and International Surfacing, Inc. ("ISI") brought suit against Cox Paving alleging generally infringement of United States Patent Nos. 3,891,585 (the " '585 patent") and 4,069,182 (the " '182 patent").[2] Claim 1 of the '585 patent is a product-by-process claim for "an elastomeric pavement repair material," i.e. asphalt rubber, produced by a particular process. Claim 11 of the '585 patent is a process claim for preparing asphalt rubber. Claims 1 and 3 of the '182 patent are also product-by-process claims for asphalt rubber.
 
 
 3
 On May 16, 1991, the district court issued a preliminary injunction enjoining Cox Paving from infringing the '585 and '182 patents. Jacobson v. Cox Paving Co., 19 USPQ2d 1641, 1658 (D.Ariz.), aff'd, 21 USPQ2d 2040 (Fed.Cir.1991). The preliminary injunction order provided, in pertinent part, as follows:
 
 
 4
 IT IS HEREBY ORDERED that effective immediately, Cox Paving Company, its agents, servants, employees, and attorneys, expressly including its president Howard Cox, and all persons in active concert and participation with them who receive actual notice of this Order, are preliminarily enjoined from directly or indirectly infringing, inducing, or contributing to the infringement of the asserted claims ... of United States Patent Nos. 3,891,585 (Claims 1 and 11) and 4,069,182 (Claims 1 and 3), by using or selling or bidding on or inducing or contributing to the use or sale, in the United States, of any combination of paving grade asphalt and non-oil resistant asphalt-soluble rubber prepared by heating paving grade asphalt to a temperature of from about 300 ?F to about 500 ?F to yield hot liquid asphalt
 
 
 5
 ....
 
 
 6
 Id.
 
 
 7
 Cox Paving appealed the order, asserting patent invalidity and noninfringement. This court affirmed the granting of the preliminary injunction on October 25, 1991.
 
 
 8
 In September of 1991, Able Bituminous Contractors, Inc.--Asphalt Rubber Systems ("Able"), a company not affiliated with any of the parties, performed asphalt-rubber work on a project located in Amarillo, Texas (the "Amarillo job"). Shortly thereafter, on November 25, 1991, Jacobson filed a petition for order to show cause on appellants for allegedly violating the preliminary injunction. Jacobson asserted that Able's work on the Amarillo job had infringed the '585 and '182 patents and was performed at the instigation of appellants. On April 1, 1992, the district court held appellants in contempt for violating the preliminary injunction and awarded Jacobson $150,000 in compensatory damages.
 
 
 9
 On April 7, 1992, Jacobson filed a second petition for order to show cause on appellants, as well as on Blaze Construction, Inc., Alan DeAtley, Albert DeAtley, and Paul Wood, for allegedly violating the preliminary injunction.[3] In addition to the Amarillo job, Jacobson asserted that appellants had violated the preliminary injunction by bidding on other Texas asphalt-rubber jobs and by conspiring with Blaze to take away from ISI an asphalt-rubber subcontract relating to a Bureau of Indian Affairs paving job located in Arizona (the "BIA job").
 
 
 10
 Following a hearing, the district court held appellants and Blaze in contempt for violating the preliminary injunction.[4] On April 14, 1993, based upon its findings and conclusions of contempt, the court awarded Jacobson trebled damages against appellants jointly and severally as follows: (1) $450,000 for the Amarillo job; (2) $1,887,993 for the Texas bidding activities; and (3) $1,852,572 for the BIA job. The court also enjoined appellants from infringing the '585 and '182 patents for a period of twenty-four months from the date of its April 14, 1993 judgment. This appeal followed.
 
 DISCUSSION
 
 11
 * In reviewing procedural matters that do not pertain to patent issues, we apply the law of the regional circuit. Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1575 (Fed.Cir.1984). Applying the law of the Ninth Circuit, we review a district court's contempt order for abuse of discretion. In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir.1993). Because our review is limited by the abuse of discretion standard, we will not reverse "unless we have a definite and firm conviction that the district court committed a clear error of judgment after weighing the relevant factors." Id. The "party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." Id. (citing Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir.1982)). The "clear and convincing" standard is an intermediate standard between "beyond a reasonable doubt" and a "preponderance of the evidence." Buildex Inc. v. Kason Indus., Inc., 849 F.2d 1461, 1463 (Fed.Cir.1988) (citing Addington v. Texas, 441 U.S. 418, 423-25 (1979)); see SSIH Equip. S.A. v. United States Int'l Trade Comm'n, 718 F.2d 365, 380 (Fed.Cir.1983). The "clear and convincing" standard has been described as evidence which produces in the mind of the factfinder an abiding conviction that the truth of a factual contention is "highly probable." Buildex, 849 F.2d at 1463 (quoting Colorado v. New Mexico, 467 U.S. 310, 316 (1984)).
 
 II
 
 12
 Turning first to the Amarillo job, we hold that the district court did not abuse its discretion in holding Cox Paving, Howard Cox, and Sidney Cox in contempt of its preliminary injunction order. The preliminary injunction enjoined the infringement, inducement of infringement, or contribution to the infringement of the '585 and '182 patents. The court found that the asphalt rubber manufactured and used during the Amarillo job constituted an asphalt-rubber composition covered by the preliminary injunction order. The court also found that Able had performed the job and that Cox Paving, Howard Cox, and Sidney Cox had "directly contributed to Able's obtaining and performing the Amarillo job." More specifically, the court found, Cox Paving and the Coxes "encouraged Able to submit a bid, offered advice concerning the bid amount, called in the bid, attended a preconstruction meeting, and visited the job site in order to check on the leased equipment." The court also found that they leased equipment and loaned employees to Able. In short, Able directly infringed the '585 and '182 patents, and Cox Paving and the Coxes induced Able's direct infringement. Therefore, the court did not err in concluding that Cox Paving, Howard Cox, and Sidney Cox had violated the preliminary injunction order.
 
 
 13
 As for Ted Lee and Gunn, Lee & Miller, the district court found that prior to the bid by Able for the Amarillo job, Howard Cox asked Lee if under the preliminary injunction he was prohibited from leasing equipment to Able. The court further found that Lee responded that, in his opinion, leasing was permitted under the injunction but that "he didn't know what the judge would do." The court noted that Lee did not suggest seeking further guidance from the court. The court also found that on September 5, 1991, Gunn, Lee & Miller filed a Uniform Commercial Code financing statement against Cox Paving reflecting the transfer of "[a]ll accounts receivable, inventory, equipment now owned or hereafter acquired and all proceeds thereof" to Lee's firm, Gunn, Lee & Miller. The court regarded this transfer as an attempt by appellants to circumvent a contempt judgment, concluding that the purpose of the transfer was to shield Cox Paving assets from any contempt order resulting from the Amarillo job.[5] Finally, the court stated that it was "unconvinced" of Ted Lee's avowed innocence as to his client's actions, particularly "in light of the financial dealings coincident with the contempt proceedings" (transfer of accounts receivable).
 
 
 14
 As already seen, the preliminary injunction enjoined infringement, inducement of infringement, and contributing to the infringement of the '585 and '182 patents. Since it is clear that Lee and Gunn, Lee & Miller neither directly infringed the patents nor contributed to their infringement, they could only properly be held in contempt if they induced infringement. In that regard, 35 U.S.C. Sec. 271(b) (1988) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." We have stated that a person induces infringement "by actively and knowingly aiding and abetting another's direct infringement." C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc., 911 F.2d 670, 675 (Fed.Cir.1990) (citing Water Technologies Corp. v. Calco Ltd., 850 F.2d 660, 668 (Fed.Cir.), cert. denied, 488 U.S. 968 (1988)). In this case, the district court's findings are insufficient to establish by "clear and convincing evidence" that Ted Lee and Gunn, Lee & Miller violated the preliminary injunction by actively and knowingly aiding and abetting Able's direct infringement. The district court's order is bereft of findings that Lee and his law firm had any contact with Able prior to, or during, the Amarillo job. In addition, we are unwilling to conclude that, absent more, Lee's advice to Howard Cox constituted "actively and knowingly aiding and abetting" Able's direct infringement. Accordingly, we hold that the district court abused its discretion in holding Ted Lee and Gunn, Lee & Miller in contempt of its preliminary injunction with respect to the Amarillo job.
 
 III
 
 15
 We turn next to the Texas bidding activities other than the Amarillo job and to the BIA job. The district court found that Sidney Cox, on behalf of Cox Paving, submitted bids for Texas asphalt-rubber jobs to be performed after the patents expired. The asphalt-rubber specified for the jobs would have infringed the patents if performed before the patent expiration date by an unlicensed asphalt-rubber supplier. The court also found that appellants, including Ted Lee, had engaged in defamatory communications to asphalt-rubber customers causing substantial damage to ISI, including the postponement of scheduled asphalt-rubber paving jobs, the cancellation of asphalt-rubber paving jobs, and the modification of state and local asphalt-rubber specifications.
 
 
 16
 As for the BIA job, the court found that Blaze initially planned to use ISI to perform the BIA asphalt-rubber subcontract. In October 1991, appellants quoted Blaze an asphalt-rubber price in connection with the BIA job that was significantly less than ISI's price. Blaze then rescheduled the BIA job to begin in September 1992, after the '585 and '182 patents would have expired. The court regarded the delay as an attempt by appellants and Blaze to circumvent the preliminary injunction order. Moreover, the court held Lee and his firm responsible for devising this plan to take the BIA job away from ISI.
 
 
 17
 Appellants contend that the court based its findings of contempt on activities which the court erroneously found constituted infringement. We agree. 35 U.S.C. Sec. 271(a) (1988) provides that "whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent." See Lang v. Pacific Marine & Supply Co., 895 F.2d 761, 765 (Fed.Cir.1990) (Section 271(a) does not cover acts other than an actual making, using or selling of the patented invention). Thus, the Texas bidding activities (other than the Amarillo job) and the BIA job did not constitute acts of infringement because they did not involve the actual making, using, or selling of the patented invention. See Eli Lilly & Co. v. Medtronic, Inc., 915 F.2d 670, 673 (Fed.Cir.1990) ("threat of sale does not constitute an act of infringement"); Standard Havens Prods., Inc. v. Gencor Indus., Inc., 953 F.2d 1360, 1374 (Fed.Cir.1991), cert. denied, 113 S.Ct. 60 (1992) (bid for sale of asphalt plant involving patented process was not direct infringement).
 
 
 18
 Jacobson contends that contempt may be upheld because the injunction prohibited appellants' bidding activities apart from such acts constituting infringement. Jacobson's argument is unpersuasive. The preliminary injunction enjoined appellants "from directly or indirectly infringing, inducing, or contributing to the infringement of the asserted claims ... of United States Patent Nos. 3,891,585 (Claims 1 and 11) and 4,069,182 (Claims 1 and 3), by using or selling or bidding on or inducing or contributing to the use or sale, in the United States...." (emphasis added). When the basis of a contempt proceeding is an injunction forbidding infringement, there can be no contempt unless there is infringement. See Eli Lilly, 915 F.2d at 673 (in an injunction prohibiting infringement, "no contempt can be found thereunder without a finding of infringement"); KSM Fastening Sys., Inc. v. H.A. Jones Co., 776 F.2d 1522, 1528 (Fed.Cir.1985) ("Infringement is the sine qua non of violation of an injunction against infringements.").
 
 
 19
 The district court never found the Texas bidding activities or the BIA job to be acts of direct infringement. As noted above, the court found that the asphalt-rubber specified for the jobs would have infringed the McDonald patents if performed before the patent expiration date by an unlicensed asphalt-rubber supplier. Moreover, liability for inducing infringement is dependent upon the existence of direct infringement. Joy Technologies, Inc. v. Flakt, Inc., 6 F.3d 770, 774 (Fed.Cir.1993) (citations omitted). See Water Technologies, 850 F.2d at 668 n. 7 ("Direct infringement is a prerequisite to finding induced infringement.").
 
 
 20
 In this case, the preliminary injunction enjoined infringement, inducement of infringement, and contributing to infringement of the '585 and '182 patents. With respect to the Texas bidding activities and the BIA job, appellants could not have violated the preliminary injunction without a finding of infringement. However, the district court's findings are insufficient to establish that appellants either directly infringed or induced infringement of the '585 and '182 patents. We interpret the injunction in a manner consistent with applicable law. Bidding was prohibited by the preliminary injunction only to the extent, if any, that it constituted infringement, which would have been the case, for example, if Cox Paving had been required--as part of the bidding process--to give a paving demonstration. We have stated that "it is preferable to allow the district courts wide latitude in framing injunctions within, or course, the dictates of Rule 65(d). Whether a party is to be held in contempt, thus, becomes the matter on which uniformity [of the rights of patent owners] is to be sought." See KSM Fastening, 776 F.2d at 1527. Therefore, we hold that the district court abused its discretion in holding appellants in contempt with respect to the Texas bidding activities, other than the Amarillo job, and with respect to the BIA job.
 
 IV
 
 21
 The district court also enjoined appellants from infringing the patents for a period of twenty-four months from the date of its April 14, 1993 judgment. 35 U.S.C. Sec. 283 (1988) provides that a district court may grant an injunction "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." This statute gives the district courts broad discretion to determine whether the facts of a case warrant an injunction and to determine the scope of the injunctive relief. Joy Technologies, 6 F.3d at 772. Accordingly, we review the district court's decision to grant an injunction and the scope of that injunction under an abuse of discretion standard. Id. "An abuse of discretion may be established by showing that the district court either made a clear error of judgment in weighing relevant factors, or exercised its discretion based on an error of law or on findings which were clearly erroneous." Id.
 
 
 22
 Because the '585 and '182 patents expired on June 24, 1992, we hold that the district court abused its discretion in issuing an injunction extending beyond the statutory terms of the patents. First, "an injunction is only proper to the extent it is 'to prevent the violation of any right secured by patent.' " Eli Lilly, 915 F.2d at 674. Pursuant to 35 U.S.C. Sec. 154 (1988), a patent secures such rights only for a term of seventeen years. Moreover, an injunction for infringement may not be punitive. Joy Technologies, 6 F.3d at 773. See also Amstar Corp. v. Envirotech Corp., 823 F.2d 1538, 1549 (Fed.Cir.1987) ("Punishment is not the purpose of an injunction....").
 
 V
 
 23
 Lastly, we address the ancillary issue raised in this appeal.[6] On January 5, 1993, the district court issued an order releasing the $500,000 preliminary injunction bond to Jacobson's counsel. Cox Paving argues that the district court erred in releasing the preliminary injunction bond before making a determination on the merits. The purpose of the bond is to indemnify the enjoined party if the court finds that the enjoined party has been wrongfully enjoined. Fed.R.Civ.P. 65(c) provides that:
 
 
 24
 No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to be wrongfully enjoined or restrained.
 
 
 25
 "Under this rule, before a court may execute a bond, it must find the enjoined or restrained party was 'wrongfully enjoined or restrained.' " Nintendo of America, Inc. v. Lewis Galoob Toys, Inc., No. 92-16364, 1994 U.S.App. LEXIS 2610, at * 12 (9th Cir. Feb. 17, 1994). "[T]here is a rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond." Id.
 
 
 26
 at * 13. Because the district court has not made a determination on the merits and thus has not determined whether Cox Paving was wrongfully enjoined, we hold that the preliminary injunction bond was improperly exonerated.
 
 CONCLUSION
 
 27
 We affirm the district court's April 14, 1993 decision with respect to Cox Paving, Howard Cox, and Sidney Cox as it relates to the Amarillo job. We reverse the district court's April 14, 1993 decision with respect to Ted Lee and Gunn, Lee & Miller as it relates to the Amarillo job. We also reverse the district court's April 14, 1993 decision with respect to all appellants as it relates to the other Texas bidding activities and the BIA job. Finally, we hold that the district court abused its discretion in issuing an injunction extending beyond the statutory terms of the '585 and '182 patents. The district court did so by enjoining appellants from infringing the '585 and '182 patents for a period of twenty-four months from the date of its April 14, 1993 decision. Accordingly, the April 14, 1993 judgment is affirmed to the extent it awards $150,000 in damages to Jacobson against Cox Paving, Howard Cox, and Sidney Cox. In all other respects, the judgment is vacated.
 
 
 28
 As for the ancillary issue, because there has not been a determination on the merits, we vacate the January 5, 1993 order with respect to the exoneration of the preliminary injunction bond and remand with instructions to reinstate the $500,000 bond.
 
 
 29
 Each side shall bear its own costs.
 
 
 
 [1]
 During the relevant period of time, Howard Cox was the president and sole shareholder of Cox Paving. His son, Sidney Cox, was an employee of Cox Paving until he resigned in January 1992. Ted Lee, a shareholder in the law firm of Gunn, Lee & Miller, represented Cox Paving
 
 
 [2]
 Carl Jacobson and E.J. Johnson owned the '585 and '182 patents. ISI held an exclusive license under the patents for asphalt-rubber paving applications in Arizona and Texas. Jacobson, Johnson, and ISI are referred to collectively as "Jacobson."
 
 
 [3]
 Blaze Construction, Inc., Alan DeAtley, Albert DeAtley, and Paul Wood are referred to collectively as "Blaze."
 
 
 [4]
 Subsequently, Blaze settled with Jacobson
 
 
 [5]
 Lee asserted that the transfer was for the purpose of securing payment from Cox Paving of more than $200,000 in legal fees owed to Gunn, Lee & Miller and that the transfer was agreed to before Gunn, Lee & Miller and Cox Paving had discussed the Amarillo job
 
 
 [6]
 On May 5, 1993, this court determined that Cox Paving may appeal the exoneration of the preliminary injunction bond as an ancillary matter