991 F.2d 808
 26 U.S.P.Q.2d 1524
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
INTERMEDICS, INC., Plaintiff-Appellant,
v.
VENTRITEX CO., INC., Michael Sweeney and Benjamin Pless,
Defendants-Appellees.
 No. 92-1076.
 United States Court of Appeals, Federal Circuit.
 Feb. 22, 1993.
 
 Before ARCHER, Circuit Judge, COWEN, Senior Circuit Judge, and CLEVENGER, Circuit Judge.
 CLEVENGER, Circuit Judge.
 
 
 1
 Intermedics, Inc. appeals from the September 13, 1991 judgment of the United States District Court for the Northern District of California granting summary judgment to Ventritex Co., Michael Sweeney and Benjamin Pless. Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1269, 20 USPQ2d 1422 (N.D.Cal.1991). The district court held that Ventritex's allegedly infringing uses of its accused implantable defibrillator fell within the patent infringement clinical trial exemption of 35 U.S.C. § 271(e)(1) (1988) and that the application of this exemption precluded granting declaratory relief to Intermedics. We affirm.
 
 
 2
 * Ventritex developed an implantable defibrillator, which it named "Cadence." In order to obtain approval for commercial sales from the Food and Drug Administration (FDA), Ventritex began clinical trials of the Cadence in 1989, believing that it was immune from claims of infringement because of the FDA clinical testing exemption provided in 35 U.S.C. § 271(e)(1). Intermedics filed suit against Ventritex. In its complaint, Intermedics alleged, inter alia, that the Cadence infringed seven of its patents relating to implantable defibrillators.* Intermedics also requested declaratory relief to determine whether Ventritex's activities threatened its patents with immediate infringement. Intermedics subsequently filed a motion for summary judgment challenging Ventritex's right to assert a section 271(e)(1) defense due to Ventritex's intent to commercialize its product before the expiration of Intermedics' patents. Ventritex responded with a motion to dismiss, which the district court converted into a motion for summary judgment. That motion asserted that Intermedics' infringement claims were precluded by Ventritex's section 271(e)(1) defense. Intermedics responded to that motion by filing, inter alia, a cross-motion for summary judgment asserting that Ventritex's activities were not solely for uses reasonably related to submitting data to the FDA.
 
 
 3
 The district court denied Intermedics' motion for summary judgment, rejecting Intermedics' argument that Ventritex could not claim a section 271(e)(1) exemption because it intended to commercialize its implantable defibrillator before the expiration of Intermedics' allegedly infringed patents. Intermedics, 775 F.Supp. at 1275, 20 USPQ2d at 1426.
 
 
 4
 The district court granted Ventritex summary judgment, finding that Ventritex's allegedly infringing acts of manufacture, use and sale of the patented invention were exempted by section 271(e)(1) because these acts were solely for uses reasonably related to generating data to submit to the FDA. The district court first distinguished noninfringing acts from infringing acts, noting that engaging in noninfringing acts that fall outside the uses permitted by section 271(e)(1) do not affect the exemption. Id. at 1278, 20 USPQ2d at 1428. Then the district court addressed each allegedly infringing activity. The district court found that every Cadence sold in the United States was used in a clinical trial and that Ventritex's decision to continue clinical trials after submitting its initial application to the FDA was reasonably related to obtaining FDA approval because a prudent applicant cannot know whether the FDA will require more data before the application is granted. Id. at 1282, 20 USPQ2d at 1431. The district also found that Ventritex's sales to foreign distributors were reasonably related to developing information to be submitted to the FDA because all Cadences sold to such distributors were ultimately resold to FDA-approved clinical investigators. Id. at 1283, 20 USPQ2d at 1432. The district court further found that Ventritex's testing activities in Germany were reasonably related to generating data for submission to the FDA because the data generated were only used in submissions to the FDA. There was no evidence that the German data were submitted to any German authorities for any purpose. Id. at 1284, 20 USPQ2d at 1432-33. The district court also found that a safety inspection of Cadence's programmer by German authorities before its use in German clinical trials was reasonably related to generating data for submission to the FDA because the tested programmer is not a part of the Cadence defibrillator and because the safety inspection was a necessary prerequisite to German import approval to conduct the FDA trials in Germany. Id. at 1285, 20 USPQ2d at 1433. The district court also found that Ventritex's demonstrations of the Cadence at scientific trade shows did not create a viable infringement claim. Id. at 1288-89, 20 USPQ2d at 1436-37. Finally, the district court granted Ventritex's motion to dismiss Intermedics' declaratory judgment claims because there was no current case or controversy arising under federal patent law. Ventritex's current infringing activities were exempt from suit under section 271(e)(1) and it was impossible to determine when FDA would grant approval to Ventritex's product thereby ending the exemption. Id. at 1289-90, 20 USPQ2d at 1437-38.
 
 II
 
 5
 Intermedics makes three distinct arguments on appeal. First, Intermedics contends that genuine issues of material fact preclude granting summary judgment on two issues: whether Ventritex's German activities are covered by the exemption and whether Ventritex's activities at medical trade shows are covered by the exemption.
 
 
 6
 Second, Intermedics argues that the district court erred in refusing to exercise its declaratory relief jurisdiction. A sufficient case or controversy exists because the existence of Ventritex's Cadence and the possibility that it may be put to nonexempt uses creates a threat of infringement of Intermedics' patents.
 
 
 7
 Finally, Intermedics contends that the district court erred when it failed to rule as a matter of law that Ventritex is not entitled to assert a section 271(e)(1) exemption for any of its activities because Ventritex intends to commercialize its implantable defibrillator before Intermedics' patents have expired. According to Intermedics, the legislative history of section 271(e)(1), the feasibility of determining Ventritex's intent to commercialize, and the impact of the exception on the economic interests of patent holders all support a narrow application of section 271(e)(1).
 
 
 8
 Ventritex replies that no genuine factual issues exist which would bar summary judgment on the issue of whether the section 271(e)(1) exemption applies in this case. All of its activities providing clinical units of the Cadence to its researcher in Germany were solely reasonably related to generating data for FDA approval. Similarly, Ventritex's trade show practices were reasonably related to conducting clinical trials.
 
 
 9
 Ventritex also argues that until FDA approves the Cadence there is no justiciable controversy to sustain a declaratory judgment action.
 
 
 10
 Finally, Ventritex argues that application of section 271(e)(1) does not depend on the manufacturer's intent to commercialize its allegedly infringing product before the expiration of the accuser's patents because Congress did not limit the availability of the exemption in this manner.
 
 III
 
 11
 A district court properly grants summary judgment if there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party opposing a summary judgment motion must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient. SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116, 227 USPQ 577, 582 (Fed.Cir.1985). This court reviews the propriety of summary judgment de novo. National Cable Television Ass'n v. American Cinema Editors, Inc., 937 F.2d 1572, 1576, 19 USPQ2d 1424, 1427 (Fed.Cir.1991).
 
 IV
 
 12
 A U.S. patent grants a patentee the right to exclude others from making, using or selling the patented invention in the United States. 35 U.S.C. § 154 (1988). Thus, ordinarily, anyone who makes, uses or sells any patented invention in the United States without authority from the patentee infringes the patent. 35 U.S.C. § 271(a) (1988). The patent statute contains an exception to this general infringement rule, an exception which permits competitors of a patentee to engage in what would constitute infringing activities before the patent expires so long as those activities are reasonably related to obtaining regulatory approval:
 
 
 13
 It shall not be an act of infringement to make, use, or sell a patented invention ... solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products.
 
 
 14
 35 U.S.C. § 271(e)(1) (1988). This exemption applies not only to drug and veterinary biological products, but also to medical devices. Eli Lilly & Co. v. Medtronic, Inc., 496 U.S. 661, 679 (1990), aff'g 872 F.2d 402, 10 USPQ2d 1304 (Fed.Cir.1989).
 
 
 15
 * Intermedics asserts on appeal that a genuine issue of material fact precludes deciding on summary judgment that Ventritex's German activities qualify for the section 271(e)(1) exemption. According to Intermedics, a factual issue exists as to whether Ventritex was making the Cadence for use and sale in Germany to fulfill FDA requirements or to secure permission from the German government to market commercially the Cadence in Germany. We have not been directed to any evidence to indicate that Ventritex's activities in Germany were not solely for purposes reasonably related to generating clinical data for submission to the FDA. To the contrary, it is undisputed that a clinical investigator implanted every defibrillator sold and sent to Germany, that all data generated from the clinical trials were in fact only submitted to the FDA, and that clinical trials in Germany are not required in order to market commercially a device such as the Cadence in Germany. Thus, no issues of material fact precluded the granting of summary judgment on this issue.
 
 
 16
 Intermedics also alleges that material issues of fact preclude deciding on summary judgment that Ventritex's demonstrations of the Cadence at medical conferences (trade shows) qualify for the section 271(e)(1) exemption. According to Intermedics, Ventritex's demonstrations of the Cadence at these conferences after it had all the investigators it needed and Ventritex's allowing some individuals to attend the demonstration who could not qualify as clinical investigators are nonexempt uses because they are not reasonably related to procuring FDA approval of Ventritex's defibrillator.
 
 
 17
 Intermedics does not contest the trial court's finding that Ventritex did not sell a single Cadence as a result of the demonstrations. Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. at 1289, 20 USPQ2d at 1436. Assuming that these nonsale demonstrations at medical conferences constitute an infringing use, we have held they are an exempt use that is reasonably related to procuring FDA approval of the device. Telectronics Pacing Sys., Inc. v. Ventritex, Inc., --- F.2d ----, 25 USPQ2d 1196, 1198 (Fed.Cir.1992). As we stated in that opinion, "[o]bservation of [the Cadence] at medical conferences by non-physicians does not impair the conclusion that such uses satisfy the requirements of § 271(e)(1)." Id. at ----, 25 USPQ2d at 1198. Further, it is unforeseeable how much data FDA will require Ventritex to submit during the approval process. Therefore, Ventritex's continuation of procuring potential investigators well into the FDA approval process does not mean that the demonstrations fail to satisfy the requirements of section 271(e)(1).
 
 B
 
 18
 Intermedics also argues that the district court erred in dismissing its claims for declaratory relief because a justiciable controversy exists to support the claims before FDA approves Ventritex's device.
 
 
 19
 Although a patentee may seek a declaration of infringement against a future infringer, Lang v. Pacific Marine & Supply Co., 895 F.2d 761, 763, 13 USPQ2d 1820, 1821 (Fed.Cir.1990), the exercise of a court's jurisdiction over a declaratory judgment action is discretionary. Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 634, 19 USPQ2d 1545, 1547 (Fed.Cir.), cert. denied, 112 S.Ct. 658 (1991). This court will determine that the decision to grant or deny declaratory relief was an abuse of discretion if:
 
 
 20
 (1) the court's decision was clearly unreasonable, arbitrary, or fanciful; (2) the decision was based on an erroneous conclusion of law; (3) the court's findings were clearly erroneous; or (4) the record contains no evidence upon which the court rationally could have based its decision.
 
 
 21
 Minnesota Mining & Mfg. Co. v. Norton Co., 929 F.2d 670, 673, 18 USPQ2d 1302, 1305 (Fed.Cir.1991).
 
 
 22
 A declaratory judgment action must contain a true actual controversy. Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 735, 6 USPQ2d 1685, 1688 (Fed.Cir.1988). In order for a patentee to meet this requirement, it must show that
 
 
 23
 the defendant [is] engaged in an activity directed toward making, selling, or using subject to an infringement charge under 35 U.S.C. § 271(a) (1982), or be making meaningful preparation for such activity; and [the] acts of the defendant must indicate a refusal to change the course of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming.
 
 
 24
 Lang, 895 F.2d at 764, 13 USPQ2d at 1822. By requiring that these conditions be met, the court ensures that a definite and concrete controversy exists between parties with adverse legal interests. Id., 13 USPQ2d at 1822. Intermedics must have shown a " 'sufficient allegation of immediacy and reality' [at the time it filed its complaint in 1991] to meet the actual controversy requirement for a declaratory judgment suit." Telectronics Pacing, --- F.2d at ----, 25 USPQ2d at 1201 (quoting Lang, 895 F.2d at 764, 13 USPQ2d at 1822). At the time Intermedics filed its complaint, Ventritex could not have attempted to sell the Cadence in the general commercial market because the FDA had yet to grant premarket approval of the device. At that time it was impossible to know when the FDA might make such a determination in response to Ventritex's application. Moreover, FDA could require Ventritex to make further changes to its device before approval is given. See 21 U.S.C. § 360j(g)(2)(C)(iii) (1988). For these reasons, the district court did not abuse its discretion in determining not to exercise its declaratory judgment jurisdiction for failure to meet the actual controversy requirement of 28 U.S.C. § 2201 (1988) (codifying the requirements for a declaratory judgment). Further, as the district court noted exercising jurisdiction over Intermedics' declaratory relief action would undermine the exemption. Currently, Intermedics has failed to establish that Ventritex's potentially infringing activities are not entitled to protection from suit for infringement under section 271(e)(1). To permit Ventritex to be protected from direct suit for infringement and yet allow the same activities to be subject to suit in a declaratory judgment action would be nonsensical.
 
 C
 
 25
 Intermedics further argues that the statute requires revocation of Ventritex's section 271(e)(1) exemption for making, using and selling activities upon a showing that Ventritex intends to commercialize an allegedly infringing product before Intermedics' patents expire. In essence, Intermedics seeks to limit use of the exemption to clinical trials that start shortly before its patents expire. We cannot agree with Intermedics' interpretation of the statute.
 
 
 26
 If the statutory language is clear, the plain meaning of the statute controls. VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1579, 16 USPQ2d 1614, 1618 (Fed.Cir.1990), cert. denied, 111 S.Ct. 1315 (1991). The plain language of section 271(e)(1) does not contain the limitation Intermedics desires to find therein. Section 271(e)(1) only states that all making, using or selling of a patented invention be solely for uses reasonably related to developing and submitting information to the FDA. There is no suggestion that a producer may only rely on the exemption if it does not intend to commercialize the product before expiration of the patents.
 
 
 27
 Further, even if the statutory language were not clear, the legislative history of section 271(e)(1) does not support the reading Intermedics proposes, even though Congress was clearly aware of the economic repercussions of the section 271(e)(1) exemption. When enacting the Drug Price Competition & Patent Term Restoration Act of 1984, Pub.L. No. 98-417, 1984 U.S.C.C.A.N. (98 Stat.) 1585, Congress addressed the commercial problems created at both ends of the patent term by the need for premarket FDA approval of drugs and medical devices and the delays incurred during this process. It permitted potential competitors to engage in otherwise infringing uses during the life of the patent, so long as those uses were reasonably related to producing data for the FDA, 35 U.S.C. § 271(e)(1) (1988), while permitting patent term extensions where product marketing may be delayed by a lengthy regulatory process. 35 U.S.C. § 156 (1988). At that time, Congress specifically rejected an amendment to the Act that would have permitted testing only during the last year of any patent term. This rejection indicates that Congress' intent may actually contradict Intermedics' reading of the statute. H.R.Rep. No. 857 (Part II), 98th Cong., 2d Sess. 8 (1984), reprinted in 1984 U.S.C.C.A.N. 2686, 2692.
 
 
 28
 Moreover, the very economic arguments made by Intermedics today, that Ventritex should not be able to develop markets while seeking FDA approval, were made to and rejected by the Supreme Court and this court in Eli Lilly, when both held that section 271(e)(1) applies to medical devices. Reliance on section 271(e)(1) is not precluded by manifestation of an intent to commercialize upon FDA approval.
 
 
 29
 After oral argument, Intermedics requested that this court dismiss the appeal. Ventritex, however, imposed a condition to its assent to dismissal, and Intermedics refused to acquiesce in that condition. Intermedics candidly admits that "no agreement was reached regarding the dismissal." Rather than enter a dismissal over an objection or impose an unwanted condition, we decline to exercise our authority to dismiss the appeal and instead render our decision on the merits. Fed.R.App.P. 42(b). The judgment below is affirmed.
 
 
 
 *
 These patents are: U.S. Patent No. 4,181,133 entitled "Programmable Tachycardia Pacer," U.S. Patent No. 4,280,502 entitled "Tachycardia Arrestor," U.S. Patent No. 4,821,723 entitled "Biphasic Waveforms for Defibrillation," U.S. Patent No. 4,830,006 entitled "Implantable Cardiac Stimulator for Detection and Treatment of Ventricular Arrhythmias," U.S. Patent No. 4,880,005 entitled "Pacemaker for Detecting and Terminating a Tachycardia," U.S. Patent No. 4,599,523 entitled "Power Priority System," and U.S. Patent No. 4,913,145 entitled "Cardiac Pacemaker with Switched Capacitor Amplifiers."