5 F.3d 1505
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 CHARTEX INTERNATIONAL PLC, Plaintiff-Appellant,
v.
M.D. PERSONAL PRODUCTS CORPORATION, Robert E. Lash and
Harvey Lash, Defendants-Appellees.
 No. 92-1556.
 United States Court of Appeals, Federal Circuit.
 Aug. 12, 1993.
 
 Before MAYER, PLAGER, and RADER, Circuit Judges.
 RADER, Circuit Judge.
 
 
 1
 Chartex International Plc sued M.D. Personal Products Corporation, Dr. Robert Lash, and Dr. Harvey Lash (collectively MDPP) for infringement of U.S. Patent Nos. 4,735,621 and 4,976,273. On cross motions for summary judgment, the United States District Court for the Northern District of California held that MDPP's activities either did not infringe under 35 U.S.C. Sec. 271(a) (1988) or fit within the exception of 35 U.S.C. Sec. 271(e)(1) (1988). Chartex Int'l, Plc v. M.D. Personal Prods. Corp., No. C-90-3622-CAL (N.D.Cal. Aug. 19, 1992). In the absence of disputes of material fact, this court affirms MDPP's entitlement to judgment as a matter of law.
 
 BACKGROUND
 
 2
 Chartex's two patents present a tubular protective device for use during sexual intercourse, generally referred to as a "female condom." MDPP developed its own female condom device for which it received U.S. Patent No. 4,867,176. The United States Food & Drug Administration (FDA) has not yet granted premarket approval to MDPP's device. FDA must grant this approval before the marketing or sale of a medical device in the United States. See 21 U.S.C. Secs. 301-393 (1988 & Supp. III 1991); 21 CFR Sec. 812.7 (1992).
 
 
 3
 Chartex alleges that MDPP infringed the '621 and '273 patents by making and using the MDPP female condom.[1] Chartex does not allege that MDPP sold any infringing devices. Rather Chartex alleges four separate instances of infringement:
 
 
 4
 1. MDPP's exhibition of its device at trade shows;
 
 
 5
 2. MDPP's conduct of consumer studies for its device;
 
 
 6
 3. MDPP's steps toward overseas manufacture and importation of its device; and
 
 
 7
 4. Drs. Robert Lash's, Robert Staab's, and Louanne Cole's use of the MDPP device during sexual intercourse.
 
 
 8
 MDPP counters that these activities either are not infringement under 35 U.S.C. Sec. 271(a) or are exempt from infringement under the FDA exception of section 271(e)(1).
 
 DISCUSSION
 Standard of Review
 
 9
 This court reviews the district court's summary judgment decisions de novo. National Cable Television Ass'n v. American Cinema Editors, Inc., 937 F.2d 1572, 1576, 19 USPQ2d 1424, 1427 (Fed.Cir.1991). The party opposing a summary judgment motion must point to an evidentiary conflict in the record; mere denials or conclusory statements do not create genuine disputes of material fact. SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1116, 227 USPQ 577, 582 (Fed.Cir.1985). Although both parties moved for summary judgment, this court need not affirm a judgment if the record discloses genuine factual disputes or does not justify a legal conclusion. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed.Cir.1987).
 
 Infringement
 
 10
 A United States patent grants a patentee the right to exclude others from making, using, or selling the patented invention in the United States. 35 U.S.C. Sec. 154 (1988). Ordinarily, anyone who makes, uses, or sells a patented invention in the United States without a license infringes:
 
 
 11
 Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.
 
 
 12
 35 U.S.C. Sec. 271(a).
 
 
 13
 Section 271(e)(1), however, provides the following exception:
 
 
 14
 It shall not be an act of infringement to make, use, or sell a patented invention ... solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products.
 
 
 15
 The Supreme Court has held that this "FDA exception" applies to medical devices as well as to drug and veterinary biological products. Eli Lilly & Co. v. Medtronic, Inc., 496 U.S. 661, 679 (1990). The patented female condom is such a medical device.[2] Thus, the Patent Act shields activities "solely for uses reasonably related" to obtaining regulatory approval for MDPP's female condom.
 
 
 16
 Chartex does not dispute the district court's finding that MDPP has never sold any female condoms. Chartex, No. C-90-3622-CAL, slip op. at 2. Instead Chartex charges that the district court improperly ignored MDPP's making of female condoms. In fact, the district court noted: "the evidence shows that the devices were manufactured for FDA trials." Chartex, No. C-90-3622-CAL, slip op. at 6. In other words, the district court found that MDPP's making activities fit within the exception to infringement codified at section 271(e)(1).
 
 
 17
 Chartex presents no additional evidence disputing the district court's finding that MDPP made its devices for FDA trials. Rather, Chartex argues that MDPP's other activities obviated its eligibility for the FDA exemption. Chartex charges that MDPP's devices--though made for FDA approval processes--forfeited their exemption status when used in other noninfringing manners.
 
 
 18
 The FDA exemption shields from infringement only "uses [of a patented invention] reasonably related to the development and submission of information" to federal agencies. 35 U.S.C. Sec. 271(e)(1). To the extent that MDPP used its devices to develop data, it remained fully within the exemption. Moreover MDPP could use the data derived from those devices for more than FDA approval. See Telectronics Pacing Sys., Inc. v. Ventritex Inc., 982 F.2d 1520, 1524, 25 USPQ2d 1196, 1199 (Fed.Cir.1992). This court reasoned:
 
 
 19
 If Congress intended to make [immediate competition at the end of the patent term] more difficult, if not impossible, by preventing competitors from using, in an admittedly non-infringing manner, the derived test data for fund raising and other business purposes, it would have made that intent clear. The statute contains no such provision.
 
 
 20
 Telectronics, 982 F.2d at 1525. While MDPP could only use its devices to accumulate FDA data, the FDA exemption does not similarly restrict use of the data.
 
 
 21
 Moreover, a product manufacturer does not lose its FDA exemption by engaging in noninfringing activities other than generating FDA data. See Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1269, 1278, 20 USPQ2d 1422, 1428 (N.D.Cal.1991), aff'd, 991 F.2d 808 (Fed.Cir.1993) (non-precedential decision). Noninfringing activities, by definition, do not constitute infringement. These activities do not require the shield of the FDA exemption. In this case, however, MDPP alleges that it used all its devices within the purposes of the FDA exemption.
 
 
 22
 Therefore, if MDPP only made its products to gather data for FDA, it remains comfortably within the section 217(e)(1) exemption. Because Chartex does not dispute the factual finding that MDPP manufactured its devices for FDA approval, this court discerns no defect in the district court's resolution on these grounds.
 
 
 23
 Thus, Chartex presents no material factual disputes about MDPP's making or selling of its device. The central issue of this appeal, therefore, turns on MDPP's alleged infringing uses.
 
 1. Trade shows
 
 24
 The district court determined that MDPP's trade show displays did not constitute infringement. See Chartex, No. C-90-3622-CAL, slip op. at 5-7. The record contains no evidence that MDPP solicited or made any sales of its device as a result of the trade shows. Trade show displays to obtain necessary information for clinical testing are exempt under section 271(e)(1). Telectronics, 982 F.2d at 1523. Moreover use of the FDA data for more than FDA approval does not revoke the exemption. Id. at 1523-24. The record shows that MDPP's three trade show displays were reasonably related to obtaining information for FDA approval. Therefore, the district court correctly determined that these uses do not constitute infringement.
 
 2. Consumer studies
 
 25
 The district court determined that MDPP's three consumer studies did not constitute infringement. Chartex, No. C-90-3622-CAL, slip op. at 7. The consumer studies consisted of focus groups, color tests, and interviews. The record shows that these studies provided information for design of product. MDPP then clinically tested, analyzed, and submitted data to the FDA on products designed according to the specifications derived from the studies. Id. For example, the August 1989 MDPP "Vaginal Sheath Consumer Research" study solicited information about product size, shape, comfort, clarity of usage instructions, and so forth. Thus, the record shows that MDPP's studies were directed toward developing information necessary to obtain FDA approval. Therefore, these uses are exempt under section 271(e)(1).
 
 3. Overseas dealings
 
 26
 The district court determined that MDPP's overseas business arrangements did not constitute infringement. See Chartex, No. C-90-3622-CAL, slip op. at 7-9. Making arrangements to have a device manufactured overseas or making arrangements to have it imported into a foreign country is neither an infringing "making," "using," or "selling" of the invention within the United States. See 35 U.S.C. Sec. 271(a). Moreover, as the district court correctly noted, preparation to infringe does not constitute infringement under section 271(a). Laitram Corp. v. Cambridge Wire Cloth Co., 919 F.2d 1579, 1583, 16 USPQ2d 1929, 1932 (Fed.Cir.1990), cert. denied, 113 S.Ct. 97 (1992); see also Eli Lilly & Co. v. Medtronic, Inc., 915 F.2d 670, 673, 16 USPQ2d 2020, 2023 (Fed.Cir.1990); Lang v. Pacific Marine & Supply Co., 895 F.2d 761, 765, 13 USPQ2d 1820, 1823 (Fed.Cir.1990). Therefore, the overseas business arrangements do not constitute infringement under the Patent Act.
 
 4. Use by Drs. Lash, Staab, and Cole
 
 27
 Finally, the district court determined that the uses of the device during sexual intercourse by Drs. Lash, Staab, and Cole did not constitute infringement. See Chartex, No. C-90-3622-CAL, slip op. at 9-10. The record shows that Dr. Lash used the device twice to determine its suitability for the FDA studies. Dr. Lash used the prototypes experimentally to determine if the device was ready for FDA feasibility studies. The prototypes failed. Dr. Lash reported these uses to the FDA.
 
 
 28
 Drs. Staab and Cole are neither employees of MDPP nor are they parties to this action. Therefore, for MDPP to be liable, it must have induced infringement of the patent under 35 U.S.C. Sec. 271(b) (1988). Section 271(b) provides:
 
 
 29
 Whoever actively induces infringement of a patent shall be liable as an infringer.
 
 
 30
 Under section 271(b), Chartex must show that MDPP "actively and knowingly aid[ed] and abett[ed] another's direct infringement." Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660, 668, 7 USPQ2d 1097, 1103 (Fed.Cir.), cert. denied, 488 U.S. 968 (1988). "Although section 271(b) does not use the word 'knowingly,' the case law and legislative history uniformly assert such a requirement." Water Technologies, 850 F.2d at 668.
 
 
 31
 Dr. Staab allegedly used a prototype marked "Sample Only/Do Not Use." Dr. Staab used the prototype without MDPP's knowledge or permission. In a March 13, 1989 letter accompanying the prototypes, MDPP instructed Dr. Staab that the prototypes were "rejects" and not for clinical use. In his sworn declaration, Dr. Staab stated that MDPP never "induced, encouraged, authorized or had any prior knowledge of any use" by him of the prototypes. Therefore, MDPP did not knowingly or actively assist Dr. Staab.
 
 
 32
 Finally, Dr. Cole used the condom on two occasions. Dr. Cole consulted with MDPP for FDA approval of their Women's Choice condom. In that capacity, MDPP provided her with samples of the device marked "CAUTION--Investigational Device. Limited by Federal law to investigational use." Dr. Cole, according to her declaration, clearly understood that MDPP did not authorize her to use or know of the use of the condoms. Therefore, the record shows that MDPP did not induce infringement in these alleged uses.
 
 
 33
 Finally, MDPP asks this court to adopt the proposition that the "making and use of a patented medical device will not constitute infringement so long as the device is not marketed for general sale during the life of the patent." Section 271(e)(1), however, does not support such a broad interpretation. The statute limits any making, use, or sale of patented devices solely to "uses reasonably related to the development and submission of information" to obtain federal regulatory approval. MDPP's alleged activities in this case meet the FDA exemption requirement.
 
 CONCLUSION
 
 34
 Because it detects no material issue of fact in dispute that MDPP's alleged activities are either noninfringing under section 271(a) or exempt under section 271(e)(1), this court affirms.
 
 COSTS
 
 35
 Each party shall bear its own costs for this appeal.
 
 
 
 [1]
 The district did not determine whether M.D. Personal Products Corporation's, Dr. Robert Lash's, and Dr. Harvey Lash's (MDPP) device is covered by Chartex's patents, but rather assumed as much in deciding summary judgment. See Chartex Int'l, Plc v. M.D. Personal Prods. Corp., No. C-90-3622-CAL, slip op. at 4 n. 1 (N.D.Ca. Aug. 19, 1992)
 
 
 [2]
 Somewhat surprisingly, Chartex raises a completely new theory for the first time in its reply brief. Chartex argues that section 271(e)(1) applies only to Class III medical devices. Under this reading of the statute, the United States Food and Drug Administration (FDA) exception would not apply to MDPP's female condom, a Class I or II medical device
 This court rejects Chartex's argument. In the first place, this argument appeared for the first time in Chartex's reply brief. The district court makes no reference to Chartex's so-called "class" distinction. At this late stage of the appeal, Chartex gives MDPP little, if any, opportunity to respond.
 Moreover, this court finds no merit to Chartex's argument as a matter of law. Section 271(e)(1) does not mention the "class" distinction for drugs or medical devices. Chartex would read limitations that may apply to 35 U.S.C. Secs. 155 & 156 (1988) into section 271(e)(1). Sections 155 and 156, however, deal with term extensions for patents relating to products subject to lengthy regulatory delays. Although section 156 and section 271(e)(1) of title 35 passed Congress as sections 201 and 202 of the Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98-417 Secs. 201, 202, 98 Stat. 1585, 1598-1603 (1984), this court declines to read possible limitations from one section into another.