ABTOX, INC., Plaintiff,

v.

EXITRON CORPORATION and
Adir Jacob, Defendants.

MDT, INC., Plaintiff,

v.

ABTOX, INC., Defendant.

ABTOX, INC., Plaintiff,

v.

MDT CORPORATION, Defendant.

Civ. A. Nos. 94–10503–MEL, 94–
10927–MEL, 94–11937–MEL.

United States District Court,
D. Massachusetts.

May 17, 1995.

David K. Wanger, William F. Lee, Hale &
Dorr, Boston, MA, Ronald L. Wanke, Jenner
& Block, Chicago, IL, William L. Anthony,
Jr., Noemi C. Espinosa, Robert Deberardine,
Brobeck, Phleger & Harrison, Palo Alto, CA,
for Abtox, Inc.

John A. Lahive, Jr., Lahive & Cockfield,
Boston, MA, for MDT, Inc., Exitron Corp.

Ralph A. Loren, John A. Lahive, Jr., Ed-
ward J. Kelly, Lahive & Cockfield, Boston,
MA, Keith V. Rockey, Kathleen Ann Lyons,
Rockey, Rifkin and Ryther, Chicago, IL, for
MDT Corp.

LASKER, District Judge.

MDT Corporation, Exitron Corporation and Adir Jacob (collectively, "MDT") move for summary judgment on Abtox's claim that MDT has infringed Abtox's U.S. Patent 4,321,232 (the " '232 Patent"). The '232 Patent describes a plasma sterilization device which Abtox currently manufactures and sells. MDT owns several patents, including U.S. Patents 4,917,586, 4,931,261 and 4,801,-427 (respectively, the " '586 Patent," " '261 Patent," and " '427 Patent," and collectively, the "Jacob Patents"), each of which embodies plasma sterilization technology which Abtox alleges violates the '232 Patent. In Count 1 of its complaint, Abtox contends that by "making, using and/or selling in the United States a plasma sterilization device whose use will necessarily employ the patented method" of the '232 Patent, MDT is liable for infringement.

MDT now moves for partial summary judgment—that is, summary judgment to dismiss Count 1 of Abtox's complaint—on the grounds that, under 35 U.S.C. § 271(e)(1), the activities alleged against MDT in Count 1 are designated as noninfringing. The motion is granted, but given the significance and relative novelty of the questions involved, a certificate will be issued under 28 U.S.C. § 1292(b) to facilitate review by the Court of Appeals for the Federal Circuit.

## I.

MDT is in the process of developing a plasma sterilizer. Adir Jacob and Exitron, a corporation with which he is affiliated, developed, built and tested at least one prototype of such a device before January 27, 1993, when Jacob and Exitron transferred the Jacob Patents and a prototype device, to MDT pursuant to an Asset Purchase Agreement among the three parties. MDT has continued testing the prototype with an eye, it asserts, toward FDA approval. The parties agree that MDT's proposed plasma sterilizer must be approved by the FDA before it can be marketed in the United States. MDT has taken no action to date to procure that approval.

Abtox claims that MDT has infringed the '232 Patent in three respects: First, by participating in the "sale" of the Jacob/Exitron plasma sterilizer technology to MDT pursuant to the Asset Purchase Agreement among the parties in January 1993.

Second, by informing its customers that MDT's plasma sterilizer would soon be commercially available and using that news as an inducement to purchase MDT's currently available equipment. This message was conveyed in a January 1994 open letter from Max Hilkert, a vice president of MDT's hospital division, to users and would-be users of MDT's Ethylene Oxide ("EO") sterilizer system, an existing product which does not employ plasma-based technology. The Hilkert letter informed potential purchasers of the MDT EO sterilizer that, if they purchased the EO sterilizer, MDT would deliver a plasma sterilizer after FDA approval had been obtained.

Finally, Abtox contends that MDT has infringed Abtox's '232 Patent by acknowledgedly planning to introduce for sale a rival to Abtox's product before the '232 Patent expires and by refusing to certify to Abtox and the Court that it will not commercialize its plasma sterilizer or seek FDA approval while Abtox's patent rights are still in effect.

## II.

It is MDT's position that the actions it has taken are specifically designated as noninfringing under 35 U.S.C. 271(e)(1), which provides that "[i]t shall not be an act of infringement to make, use or sell a patented invention ... solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products." In *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 672–74, 110 S.Ct. 2683, 2689–90, 110 L.Ed.2d 605 (1990), the Supreme Court held that the § 271(e)(1) exemption applies to medical devices as well as drugs.

Abtox asserts that MDT's device is not exempt under § 271(e)(1) because (1) as noted above, MDT has not represented to Abtox or the Court that it will refrain from seeking commercial approval for the device until after the expiration of Abtox's patent or that it

will limit its current use of its prototype plasma sterilizer to purposes reasonably related to receiving FDA approval, (2) MDT has already committed acts of infringement that fall outside the scope of the § 271(e)(1) exemption, such as the January 1993 Jacob/Exitron sale to Jacob and the dispatch of the January 1994 Hilkert letter to MDT customers and (3) as a so-called Class I or Class II medical device, the MDT plasma sterilizer falls outside the scope of the § 271(e)(1) exemption.

■ Abtox's contention that to be eligible for the protection of § 271(e)(1), a party must represent that it will refrain from specified activities for the life of the patent which, in the absence of § 271(e)(1), it might be found to infringe, is unpersuasive, and Abtox has presented no evidence or authority to support it. Indeed, such authority as there is construing this rather new and somewhat esoteric provision is to the contrary. As Magistrate Judge Brazil noted in *Intermedics, Inc. v. Ventritex, Inc.,* 775 F.Supp. 1269, 1277–78 (N.D.Cal.1991), *aff'd without op.,* 991 F.2d 808 (Fed.Cir.1993),[1] "Congress wanted the courts, in applying this statute, to focus on *conduct ('uses') that actually has occurred* (as opposed to uses to which a party might put its product in the future) *and that would constitute infringement* but for the exemption." (emphasis in original)).

■ Moreover, Abtox's assertion that § 271(e)(2)—as distinct from § 271(e)(1)— bars MDT from later seeking commercial approval for its device until after the '232 Patent has expired is also without support. The *Eli Lilly* Court appears to have held explicitly that acts of infringement specified in § 271(e)(2) apply only to drug patents, 496 U.S. at 676, 678, 110 S.Ct. at 2692–93, and accordingly its provisions are inapplicable in the case at hand, which concerns a medical device.

■ Nor is there merit, as I see it, to Abtox's argument that the actions which MDT has taken fall outside the scope of § 271(e)(1). That provision specifies that it

shall not be an act of infringement to make, use or sell a patented invention solely for use reasonably related to the FDA approval process. The Court of Appeals for the Federal Circuit has concluded that activities that were at least as "commercially extensive" as those engaged in by MDT either fell within the § 271(e)(1) exemption or did not otherwise constitute acts of infringement. *See Chartex International PLC v. M.D. Personal Products Corporation,* 1993 WL 306169 at * 2–3, 1993 U.S.App. LEXIS 20560 at 8–10 (displaying product at trade shows and conducting studies of consumer response fall under § 271(e)(1)); *Intermedics,* 1993 WL 87405 at * 3–4, 1993 U.S.App. LEXIS 3620 at 10–12 (sales overseas and demonstration at conferences fall under § 271(e)(1)); *Telectronics Pacing Systems v. Ventritex, Inc.,* 982 F.2d 1520, 1522–25 (Fed.Cir.1992) (demonstration at conference falls under § 271(e)(1); disseminating data to journalists, analysts and investors not otherwise infringement).

As Judge Brazil wrote, the appropriate question is whether it "would have been reasonable, objectively, for a party in [MDT]'s situation to believe that there was a decent prospect that the 'use' in question would contribute (relatively directly) to the generation of kinds of information that was likely to be relevant in the processes by which the FDA would decide whether to approve the product?" 775 F.Supp. at 1280. Here, it is undisputed that MDT must submit its plasma sterilization device to the FDA for approval before the device can be marketed, and there is every reason to believe that it will do so. MDT has plausibly represented, particularly in Jacob's affidavits of November 28, 1994 and May 15, 1995, that MDT is and has been actually engaged in the process of gathering the funds and information necessary to accomplish the goal of obtaining that approval, and Abtox has produced no evidence to refute this representation. Although the decisional law contains little guidance as to how closely and directly an applicant's activities must relate or refer to the FDA approval

---

1. The Court of Appeals' unpublished opinion in *Intermedics* may be found on-line at 1993 WL 87405, 1993 U.S.App. LEXIS 3620.

process in order to be entitled to the protection of § 271(e)(1) (that is, what the precise meaning of "reasonably related" is in this context) the consensus among the few courts that have considered the issue is that Congress intended that "the courts give parties some latitude in making judgments about the nature and extent of the otherwise infringing activities they would engage in as they sought to develop information to satisfy the FDA." *Intermedics,* 775 F.Supp. at 1280. In my view, MDT's activities are, and have been, no less "reasonably related" to the FDA approval process than the activities of the parties in *Intermedics, Chartex* and *Telectronics Pacing Systems.*

As its final point, Abtox argues that the application of the § 271(e)(1) exemption to this case is inappropriate because the MDT plasma sterilization mechanism is likely to be deemed a Class I or Class II device by the FDA. Class I and Class II devices are subject to an expedited approval process. Accordingly, the theory runs, the purpose of § 271(e)(1) (to prevent the 17 year life of a U.S. patent from being effectively extended, as would be the case in the absence of § 271(e)(1), because a would-be competitor would not be legally free to *start* the FDA application process until the existing patentee's rights had expired) is not present in the case of Class I and Class II devices and the statute should accordingly have no application with regard to them.

This argument may have some force as a policy matter. However, § 271(e)(1) makes no distinction between Class I and Class II devices on the one hand, and Class III devices on the other and Abtox has cited no authority to support its theory. Moreover, the *Chartex* court specifically rejected this argument. *See* 1993 WL 306169 at * 2, 5 n. 2, 1993 U.S. App. LEXIS 20560 at 4 n. 2.

\* \* \*

I recognize that this disposition of MDT's motion involves a controlling question of law and that, because of the novelty and complexity of the provisions of § 271(e)(1), there is substantial ground for a difference of opinion as to the correctness of my decision. Accordingly, I am prepared to certify the decision for an immediate appeal to the Court of Appeals for the Federal Circuit pursuant to 28 U.S.C. § 1292(b) because such an appeal would materially advance the ultimate termination of the litigation. The parties should submit promptly a proposed specification of the issue to be appealed—on a joint basis if agreement can be reached and, if not, separately.

MDT's motion for partial summary judgment is granted. It is so ordered.